UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

INDAR PITTAM,

                Petitioner,

                                            **MEMORANDUM & ORDER**

       v.                                  09-CV-775 (PKC)

SUPERINTENDENT ROBERT ECOLE,

                Respondent.

--------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Indar Pittam ("Petitioner") brings this *pro se* Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, challenging his 2006 convictions for various offenses, including Arson in the First Degree, Criminal Possession of a Weapon in the Third Degree, Criminal Mischief in the Fourth Degree, Criminal Mischief in the Fourth Degree, and Reckless Endangerment in the First Degree, stemming from two firebombing incidents. He sets forth eight claims in his petition: (a) the trial court (i) made improper comments to defense counsel; (ii) allowed improper testimony to be elicited from a prosecution witness; (iii) improperly limited defense counsel's cross-examination of witnesses; and (iv) failed to respond to a jury inquiry; (b) prosecutorial misconduct; (c) ineffective assistance of trial counsel; and (d) ineffective assistance of appellate counsel. Petitioner also seeks an evidentiary hearing regarding his previously filed motion in State court to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10. Because Petitioner's claims are procedurally barred and/or without merit, his *habeas* petition and request for a hearing are denied.

## I. The Arrest and Indictment

On March 2, 2001, Petitioner assisted Davendra Persaud in carrying out the firebombing of 104-78 112th Street, Queens, the family home of Rocky Nath, at approximately 12:30 a.m. (Dkt. 10[1] - Trial Transcript ("Tr.") at 875, 882-90), and an attempt to firebomb 107-67 111th Street, Queens, the family home of Azeema Ali, at approximately 12:45 a.m (Tr. at 419).[2] Persaud was arrested and charged. (Tr. at 395.) On March 6, 2001, at approximately 12:30 a.m., as part of a plan to absolve Persaud by creating copycat events while Persaud was in custody, Petitioner again firebombed the Naths' home in the same manner as the March 2 incident. (Tr. at 952-54, 1073.) A security camera mounted on the Naths' home captured Petitioner's image. (Tr. at 454, 895-96.) Three men who were present at the March 2 incident and with whom Petitioner shared his March 6 plans – Simeon Seecharan, Imran Hoosain, and Krishna Singh – were later arrested for unrelated charges and all confessed to what they knew about the March 2 and March 6 firebombings. (Tr. at 579, 956-57, 1106.)

With respect to the March 2 incident, Petitioner was indicted, together with Persaud, on various charges, including Arson in the First and Second Degrees (N.Y. Penal Law §§ 150.20, 150.15[1]), Attempted Arson in the First and Second Degree (N.Y. Penal Law §§ 110.00, 150.20, 150.15); Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[2]), and Reckless Endangerment in the First Degree (N.Y. Penal Law § 120.25). (Dkt. 10 - Indictment at 1.) With respect to the March 6 incident, Petitioner was charged separately in the

---

[1] Dkt. 10 refers to the State court records, which were filed by Respondent in hard copy and contain all documents pertaining to Petitioner's State court proceedings, including the entire trial transcript and his appeals and collateral challenges.

[2] Because Petitioner was convicted, the Court recites the relevant facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

same indictment with Arson in the First and Second Degrees (N.Y. Penal Law §§ 150.20, 150.15[1]), Criminal Mischief in the Fourth Degree (N.Y. Penal Law § 145.00[1]), Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[2]), Reckless Endangerment in the First Degree (N.Y. Penal Law § 120.25), and Reckless Endangerment of Property (N.Y. Penal Law § 145.25). (Dkt. 10 - Indictment at 2.)

## II. Conviction and Sentencing

On November 11, 2002, Petitioner was convicted at trial of Criminal Mischief in the Fourth Degree and two counts of Reckless Endangerment in the First Degree, with respect to the March 2 incident, and Arson in the First Degree, Criminal Mischief in the Fourth Degree, Criminal Possession of a Weapon in the Third Degree, and Reckless Endangerment in the First Degree, with respect to the March 6 incident. (Tr. at 1482-83.) The jury returned a verdict of not guilty on all remaining counts. (Tr. at 1482-83.)

On June 18, 2003, Petitioner was sentenced to an indeterminate term of 20 years to life incarceration for the first-degree arson conviction, 2-1/3 to 7 years for the weapon possession and reckless endangerment convictions, and one year for each of the criminal mischief convictions, with all sentences running concurrently except for the prison term for one count of reckless endangerment, which was to run consecutively. (Dkt. 10 - Transcript of Sentencing, June 18, 2003 at 6-7.)

## III. Direct Appeal

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, through appellate counsel, raising eight claims. *People v. Pittam*, 804 N.Y.S.2d 778 (N.Y. App. Div. 2005). The eight claims were: (a) the trial court made improper comments that deprived Petitioner of a fair trial; (b) the evidence was legally insufficient with respect to the first-degree

arson conviction, and the verdict on that count was against the weight of the evidence; (c) the prosecutor made improper comments at summation; (d) the trial court failed to provide a meaningful response to a jury note; (e) the trial court permitted improper testimony to be elicited from Hoosain; (f) the trial court improperly limited defense counsel's cross-examination of Seecharan and Hoosain; (g) Petitioner's trial counsel provided ineffective assistance; and (h) the sentence was excessive. (Dkt. 10 - Brief for Defendant-Appellant, Nov. 26, 2004 ("Pet'r App. Br.").)

On November 5, 2005, the Appellate Division affirmed the judgment, but in response to the excessive sentence claim, lowered the first-degree arson sentence to an indeterminate term of 15 years to life, and ordered that all terms of incarceration run concurrently. *Pittam*, 804 N.Y.S.2d 778-79. The court addressed the merits of Petitioner's judicial misconduct, sufficiency of the evidence, and ineffective assistance of counsel claim, and summarily denied the remaining claims either because they were unpreserved for appellate review or without merit. *Id.* With respect to the judicial misconduct claim, the Appellate Division found that the trial court's comments, though "inappropriate," did not amount to deprivation of a fair trial. *Id.* at 778. Regarding Petitioner's legal sufficiency claim, the court found that it was both unpreserved for appellate review and that the "verdict of guilt was not against the weight of the evidence[.]" *Id.* As for the ineffective assistance claim, the court found that Petitioner "was afforded meaningful representation and was not denied effective assistance of counsel." *Id.* at 779.

On February 7, 2006, the New York Court of Appeals denied Petitioner's application for leave to appeal the denial. *People v. Pittam*, 845 N.E.2d 1287 (N.Y. 2006).

## IV. First *Coram Nobis* Petition

In February 2006, Petitioner, acting *pro se*, filed a petition for a writ of error *coram nobis*, arguing that he was deprived effective assistance of counsel based on both trial counsel's failure to preserve the legal sufficiency claim and appellate counsel's failure to raise trial counsel's ineffectiveness for not preserving the legal sufficiency claim. (Dkt. 10 - Affidavit in Support of Notice of Motion for Writ of Error *Coram Nobis*, Feb. 16, 2006, ¶ 4.) In response to the *coram nobis* application, Petitioner's appellate counsel submitted an affirmation, asserting that he had, in fact, raised a legal sufficiency claim, as well as an ineffective assistance of trial counsel claim on other grounds. (Dkt. 10 - Affirmation in Response to Appellant's Writ of Error *Coram Nobis*, June 15, 2006, ¶ 4.)

On October 17, 2006, the Appellate Division denied Petitioner's application, holding that he had failed to establish that he was denied effective assistance of counsel. *People v. Pittam*, 822 N.Y.S.2d 456 (N.Y. App. Div. 2006). On February 27, 2007, the Court of Appeals denied Petitioner's application for leave to appeal the denial of his first *coram nobis* petition. *People v. Pittam*, 864 N.E.2d 626 (N.Y. 2007).

## V. §440 Motion

In January 2008, Petitioner filed a *pro se* motion in Queens County Supreme Court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 ("440 Motion") on the ground that the indictment was jurisdictionally defective because Petitioner's name did not appear in the individual counts of the indictment. (Dkt. 10 - Affidavit in Support of Motion to Vacate, Jan. 30, 2008, ¶ 2.)

On March 19, 2008, the court denied Petitioner's motion on the ground that it was procedurally barred because the record was sufficient to have permitted adequate review of this

issue on appeal, but Petitioner failed to appeal on that basis. (Dkt. 10 – Motion to Vacate Judgment decision (Lasak, J.), Mar. 19, 2008 at 3.) On July 23, 2008, the Appellate Division denied Petitioner's motion to appeal the denial of his 440 Motion. (Dkt. 10 - Decision & Order on Application (Covello, J.), July 23, 2008 at 1.)

## VI. Second *Coram Nobis* Petition

Petitioner filed a second *pro se* petition for a writ of error *coram nobis* with the Appellate Division, arguing that his appellate counsel was ineffective for not pursuing a claim of ineffective assistance of trial counsel, seeking dismissal of the indictment based on the omission of Petitioner's name from the individual counts. (Dkt. 10 - Affidavit in Support of Petition for a Writ of Error *Coram Nobis*, July 30, 2008, ¶ 8.)

On October 28, 2008, the Appellate Division denied Petitioner's application, holding that he failed to establish that he was denied effective assistance. *People v. Pittam*, 865 N.Y.S.2d 566 (N.Y. App. Div. 2008). On January 27, 2009, the Court of Appeals denied Petitioner leave to appeal the denial of his second *coram nobis* petition. *People v. Pittam*, 902 N.E.2d 448 (N.Y. 2009).

## VII. Petition for Writ of *Habeas Corpus*

On February 18, 2009, Petitioner, acting *pro se*, timely filed the instant petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254. (Dkt. 1.) Petitioner raises all, but two, of the claims he raised in his State court submissions: (a) the trial court deprived him of a fair trial by intentionally making improper comments that biased the jury against defense counsel; (b) the prosecutor made improper comments during summation; (c) the trial court failed to respond to a jury inquiry; (d) the trial court permitted improper testimony to be elicited from Hoosain; (e) the trial court improperly limited defense counsel's cross-examination of Seecharan and Hoosain; (f)

Petitioner's trial counsel provided ineffective assistance by not preserving the legal sufficiency claim and not seeking dismissal of the indictment based on Petitioner's name not appearing in every count; and (g) his appellate counsel provided ineffective assistance by failing to argue that trial counsel was ineffective based on these failures.  (Dkt. 1.)

## DISCUSSION

### I. Standard of Review

Under 28 U.S.C. § 2254, a federal district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  In order to obtain relief, an individual in custody must demonstrate, *inter alia*, that he has: (1) exhausted his potential State remedies; (2) asserted his claims in his State appeals such that they are not procedurally barred from federal *habeas* review; and (3) satisfied the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if his appeals were decided on the merits.  *See e.g., Philbert v. Brown*, 11-CV-1805, 2012 WL 4849011, at *5 (E.D.N.Y. Oct. 11, 2012).

### a. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," such that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen. of State of N.Y.,* 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (citations and internal quotation marks omitted).

A petitioner is not required to cite "book and verse on the federal constitution" in order for a claim to be fairly presented. *Picard v. Connor,* 404 U.S. 270, 275, 278 (1971) (citations omitted)). Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the "substantial equivalent of the habeas claim." *Id.* (citations omitted). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye,* 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he still may fairly present his federal claim to the State court even by alleging a pattern of facts that generally give rise to constitutional analysis. *See id.* at 194.

AEDPA provides an exception to the general exhaustion requirement. A district court may, in its discretion, deny on the merits *habeas* petitions containing both exhausted and unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). The State may also waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3).

### b. Procedural Default

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell,* 556 U.S. 449, 465 (2009) (internal quotation marks and citations omitted). Where the State court has explicitly relied upon procedural default to dispose of a claim, there is an

"adequate and independent state ground" for the judgment, and federal *habeas* review is prohibited. *Harris v. Reed,* 489 U.S. 255, 260 (1989); *see also Galarza v. Keane,* 252 F.3d 630, 637 (2d Cir. 2001) (State court's reliance must be "unambiguous and clear from the face of the opinion"); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991) (reasoning that States have an interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct its own errors").

To overcome the bar to federal *habeas* review of a claim that has been procedurally defaulted in State court, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748-50). The court may find cause where "some objective factor external to the defense" prevented the petitioner from presenting the claim. *Coleman*, 501 U.S. at 753. Once cause is established, the petitioner must also demonstrate "prejudice" by showing that "there is a reasonable probability that the result of the trial would have been different" had the alleged constitutional violation not occurred. *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (citation and internal quotation marks omitted). If the petitioner is unable to show cause and prejudice, his procedural default may only be excused if he can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.,* "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo,* 513 U.S. 298, 321 (1995)).

### c. AEDPA Deference

Where a State court reaches the merits of a claim asserted in a § 2254 *habeas* petition, the

State court's decision is entitled to a deferential standard under AEDPA.  Under AEDPA, an

application for *habeas* relief should not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d); *see also Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir. 2002).  "Clearly

established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme

Court's decisions as of the time of the relevant state-court decision.'"  *Howard v. Walker*,

406 F.3d 114, 122 (2d Cir. 2005) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.

2002)).

"A federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal

law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Gilchrist v.*

*O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000));

*see Ryan,* 303 F.3d at 245 (the question is "not whether the state court was incorrect or erroneous

in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so") (citing

*Sellan v. Kuhlman*, 261 F.3d 303, 309-310 (2d Cir. 2001) (internal quotation marks, alterations,

and emphases omitted)).   The petition may be granted only if "there is no possibility fairminded

jurists could disagree that the state court's decision conflicts with [the Supreme] Court's

precedents."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  The Second Circuit, however,

has cautioned that while some degree of incorrectness beyond error is required, that degree "need

not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

## II. Petitioner's Claims

### a. Petitioner's Claims That Are Unexhausted, Yet Procedurally Barred

Four of Petitioner's claims are unexhausted, yet procedurally barred, such that they cannot be considered on *habeas* review: (1) the prosecutor made improper comments during summation; (2) the trial court failed to respond to a jury inquiry; (3) the trial court permitted improper testimony to be elicited from Hoosain; and (4) the trial court improperly limited defense counsel's cross-examination of Seecharan and Hoosain.

### i. Petitioner's Claims are Unexhausted

Petitioner's application to the Court of Appeals seeking leave to appeal the Appellate Division Order affirming the modified judgment of conviction detailed four separate claims, but did not include the four claims identified above, except by reference in a concluding statement: "it is therefore respectfully requested that Leave to Appeal be granted so that these issues and the other issues contained in Appellant's Brief, can be considered." (Dkt. 10 – Letter, dated December 27, 2005, at 5.) The reference to "other issues" is insufficient to satisfy the governing standard of fairly apprising the Court of Appeals regarding factual allegations and a legal basis. *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991) (finding that *habeas* petitioner's attaching of his Appellate Division briefs to his application to the Court of Appeals did not sufficiently "present that court with an opportunity to rule on his sentencing and prosecutorial misconduct claims).

Petitioner seeks to distinguish the instant case from *Hoke* because there, the petitioner simply attached his Appellate Division brief to his application to the Court of Appeals without referencing the two claims at issue in his *habeas* petition. (Pet'r Reply at 10); *Grey*, 933 F.2d at 120. However, since *Hoke*, the Second Circuit has made clear that vague references to earlier briefs are also insufficient based on the general principle that the applicant must not "transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave." *Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000).

In *Jordan,* the petitioner argued that his application to the New York Court of Appeals sufficiently presented his issues to that court based on the Second Circuit's decision in *Morgan v. Bennett*, 204 F.3d 360, 369-70 (2d Cir. 2000), in which the Circuit held that a petitioner had sufficiently apprised the Court of Appeals of his claims where he expressly stated that he was relying on *all* of the claims from the attached prior briefs, and did not include detailed arguments in the petition itself.[3] In rejecting the petitioner's argument in *Jordan*, Circuit emphasized that the petition in *Morgan* was only sufficient because of the explicit request to consider *all* prior claims, coupled with the lack of exposition on any particular issue. 206 F.3d at 199 ("Had [Jordan] more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail but rather only 'request[ed that the Court of Appeals] consider and review all issues outlined in defendant-appellant's brief,' the result here would be different and the remaining claims would have been fairly presented to the Court of Appeals.").

---

[3] The petition in *Morgan* simply summarized the procedural posture of the case and concluded with: "I am enclosing copies of the briefs filed in the Appellate Division and that Court's order and opinion . . . .*We request this Court to consider and review all issues outlined in defendant-appellant's brief and pro se supplemental brief.*" *Morgan*, 204 F.3d at 369-70 (emphasis added).

Here, because Petitioner failed to specifically identify in this Court of Appeals application the four claims at issue, and instead relied on a vague reference to "other issues" briefed in his earlier submissions, he has failed to properly exhaust these claims in State court. [4]

### ii. Petitioner's Claims are Procedurally Barred

"[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997) (quoting *Coleman,* 501 U.S. at 735) (emphasis omitted). New York State procedural rules only allow one application for leave to appeal to the Court of Appeals. *See Hoke*, 933 F.2d at 120; *Batista v. Boucaud*, No. 09 Civ. 4800 (NRB), 2010 WL 3069638, at *4 (S.D.N.Y. Jul. 30, 2010).

Because Petitioner failed to raise the four claims in his application for leave to appeal to the Court of Appeals, further attempts to obtain State court review would be futile, and his claims are therefore improperly exhausted *and* procedurally barred from federal *habeas* review. *See Wood v. Artuz*, 39 F.Supp.2d 211, 216 (E.D.N.Y. 1999).

Petitioner can only overcome the procedural bar by showing cause plus prejudice, or that a miscarriage of justice will result. *Artuz*, 269 F.3d at 91. "[T]he question of cause does not turn on whether counsel erred or on the kind of error counsel could have made. . . . Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner

---

[4] *See Durden v. Artuz*, 2002 WL 75832, at *2 (E.D.N.Y. Jan. 10, 2002) (stating that merely attaching the brief without identifying any claims is insufficient because the petitioner did not expressly state that he was raising all claims); *Bailey v. State of New York*, 2001 WL 640803, at *4-6 (S.D.N.Y. June 8, 2001) (holding that it is insufficient to explain one claim in detail and attach a brief with a statement: "In support of this application, [petitioner] relies on this letter, his main and reply briefs filed with the Appellate Division, and already provided to this Court, as well as the attached hearing transcripts).

can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Strickler*, 527 U.S. at 283 (explaining common, acceptable factors that show cause for default). Petitioner has not alleged or demonstrated such cause and, accordingly, the Court need not consider whether Petitioner was prejudiced.

Neither has Petitioner shown that a fundamental miscarriage of justice will result from a failure to hear these claims on the merits. *Travis*, 313 F.3d at 730; *see Engle v. Isaac*, 458 U.S. 107, 135 (1982) (for the most part, "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard"); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice must rise to a level where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496. While Petitioner denies his involvement in the crimes (Pet'r Reply ¶ 5-12), he has offered no evidence to meet the extremely heavy burden of demonstrating actual innocence. *See House v. Bell*, 547 U.S. 518, 536-37 (2006) ("prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'") (quoting *Schlup*, 513 U.S. at 327). Thus, Petitioner cannot overcome the procedural bar to his four unexhausted claims.

**b. Petitioner's Claim Regarding Allegedly Improper Comments by the Trial Court**

Petitioner claims that the trial court deprived him of a fair trial by intentionally making improper comments that biased the jury against defense counsel. This claim is properly exhausted and not procedurally barred. However, it does not establish a constitutional violation under the deferential standard established by AEDPA.

In support of his claim of impropriety by the trial court, Petitioner highlights a group of comments made by the trial judge to defense counsel that Petitioner claims gave the jury the impression that defense counsel acted improperly and was inept. (Dkt. 1 at 43-51.) Representative comments include:

(b) The Court accused Counsel of making "speeches" and… implied that Counsel was not conducting a proper *Voir Dire*.

(p) When Counsel once again inadvertently used the word "Police" instead of "Fire Marshal", and told the Court that the error must be due to a "mental block", the Trial Court stated, "I hope that's all it is."

(w) During cross-examination of a key witness the Court stated that the statements made by the Counsel relating to what the witness had just testified to, were "in your mind."

(x) During further cross-examination Counsel again inadvertently referred to Dave[5] as a participant in a particular conversation when the Court stated "That's about six or seventh time you have done that… The Court again implied that Counsel was intentionally misleading the Jury. Counsel once again referred to Dave as a participant in a particular conversation, and the Court stated, in sum and substance, that Counsel's use of the name Dave was "not an accident".

(Dkt. 1 at 43-51.)

Petitioner also accuses the trial judge of making comments that implied that the court favored the prosecution. For instance:

[The] Court in response to the Prosecutor's objection told the Prosecutor that "[w]hen you get on redirect, you can read the whole statement. It's in evidence. You can read the whole thing and they will finally find out what he said". The implication is that the Counsel [was] deliberately misleading the Jury.

(Dkt. 1 at 52.)

However, the mere making of comments by a judge during the trial, even if negative, does not establish a violation of constitutional rights. *See Daye*, 712 F.2d at 1572; *Scully*, 779 F.2d at 806. Rather, "[a] trial judge's intervention in the conduct of a criminal trial would have

---

[5] "Dave" was Petitioner's co-defendant.

to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." *Daye*, 712 F.2d at 1572. As the Supreme Court has noted, "A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary effort at courtroom administration – remain immune." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). Thus, Petitioner has an extremely high bar to pass in order to establish that he was denied a fair trial based on the judge's comments.

Here, the judge's comments, although deemed to be inappropriate by the Appellate Division, did not deprive Petitioner of a fair trial. Though, at times, harshly worded, the judge's comments were factually accurate and necessary to correct misstatements or mistakes by defense counsel, such as using "Police" instead of "Fire Marshal" (Dkt. 1 at 47, 48), and exceeding the bounds of proper *voir dire* (Dkt. 1 at 44, 45). *See Jones v. Donnelly*, 487 F.Supp.2d 403, 4410-11 (S.D.N.Y. 2007) (no constitutional violation where court intervened during criminal defendant's testimony to clarify relevant information, even though some questions challenged the testimony). Furthermore, given that these were the only arguably improper comments in a month-long trial, they were insufficient to constitutionally impair the jury or the fairness of the trial. *See Francolino v. Kuhlman*, 224 F.Supp.2d 615, 641-42 (S.D.N.Y. 2002) (trial court's "ill-advised remarks," properly viewed in context of entire lengthy trial, did not act to deprive petitioner of due process); *Katowski v. Greiner*, 212 F.Supp.2d 78, 85 (E.D.N.Y. 2002) ("'A petitioner claiming that a judge's bias deprived him of a fair trial faces a difficult task,' and 'a

federal court will not lightly intervene when such a claim is asserted[.]'") (quoting *Gayle v. Scully*, 779 F.2d 802, 803 (2d Cir. 1985)).[6]

Thus, the Appellate Division's finding that the trial judge's comments did not amount to a violation of due process[7] is not contrary to, and does not involve an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *see also Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir. 2002).

### c. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner alleges that both his trial and appellate counsel provided ineffective assistance of counsel. While these claims are properly exhausted and not procedurally barred, they fail to establish a constitutional violation under AEDPA's deferential standard.

#### i. Ineffective Assistance Standard

To prevail on a claim for ineffective assistance of counsel, Petitioner must demonstrate deficient performance and prejudice; namely, that (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 680 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If Petitioner fails to meet either the performance or prejudice prong, his claim must be rejected. *See, e.g., Strickland,* 466 U.S. at 687, 697; *Brown v. Artuz,* 124 F.3d 73, 80 (2d Cir. 1997) (seeing no need to remand for findings as to counsel's performance, given that the petitioner "cannot satisfy the prejudice prong of

---

[6] Indeed, the jury's decision to acquit Petitioner of seven counts of the indictment reflects its careful consideration of the charges and evidence.

[7] *See Pittam*, 804 N.Y.S.2d at 778 (holding that "none of the court's remarks during the trial prevented the jury from arriving at an impartial verdict based upon the evidence present", nor did they deprive Petitioner of a fair trial).

the *Strickland* test"); *Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001) (declining to address prejudice issue where the petitioner did "not establish a deficiency in representation").

With respect to the performance prong, it is recognized that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under the totality of the circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard,* 545 U.S. 374, 408 (2005)).

### ii. Application of *Strickland* to Petitioner's Ineffective Assistance of Trial Counsel Claims

Petitioner claims ineffective assistance by his trial counsel due to the attorney's (1) misstatements at trial,[8] (2) participation in off-the-record sidebar conferences,[9] (3) withdrawal of a motion for a mistrial, (4) failure to object to misconduct by the prosecutor,[10] and (5) failure to

---

[8] Petitioner specifies three instances of confusion and misstatements by trial counsel: repeatedly referring to Fire Marshals as "Police" (Tr. at 587, 605, 609, 664, 665); cross-examining a witness on statements that were allegedly omitted by the witness but were, in fact, in the witness's prior statement (Tr. at 610); and repeatedly referring to co-defendant "Dave" as if he were at a particular location when he was not (Tr. at 1010, 1011, 1022, 1138, 1153).

[9] Petitioner alleges approximately 50 bench conferences where trial counsel waived the requirement of stenographic notes. (Dkt. 1 at 83.) Petitioner protests the lack of consultation with Petitioner in waiving the requirement, and the lack of a record of the bench conferences. (Dkt. 1 at 83.)

[10] Petitioner alleges that the prosecutor improperly vouched for a prosecution witness by stating, during summation, "Now if [Witness] Krishna Singh were coming in here… just looking to implicate this Defendant at all costs… why wouldn't he just tell you that he saw the Defendant throw the bottle. Why wouldn't he do that[?]" (Tr. at 1383). (Dkt. 1 at 68.) At another point, the prosecutor also argued that it pained Hoosain to implicate his friend, Petitioner (Tr. at 1372). (Dkt. 1 at 68.)

request a circumstantial evidence charge. (Dkt. 1 at 81-84.) None of these claims objectively demonstrates deficient representation or that the results of the proceedings would have been different had trial counsel taken these actions.

First, with regard to misstatements by Petitioner's trial counsel, the record indicates that all of the alleged misstatements were immediately corrected and amounted to momentary errors that did not alter the result of the proceedings, thus failing to satisfy the prejudice prong of *Strickland*. For example, in the instances where trial counsel, during the examination of a witness, mistakenly referred to "Dave" being at a particular location, the witness quickly corrected the mistake with minimal intervention by the court.[11] Mistaken references to "Police", as opposed to "Fire Marshals",[12] and trial counsel's error as to whether a witness's prior statement included information that the witness testified to at trial[13] were similarly corrected almost immediately.

---

Other comments include one that characterized Petitioner as putting "the lives of many innocent people in jeopardy, people who are asleep, children" (Tr. at 1385); a statement during summation that the "Nath family surveillance camera" saw Petitioner throw the bottle when he alleges that the tape did not show such an event (Trial at 1384); and one that referred to defense counsel's yelling, screaming, and sweating, which Petitioner claims was meant to demean and ridicule his trial counsel (Tr. at 1370). (Dkt. 1 at 69.)

[11] The witness often replied, "Dave wasn't there." (Tr. at 1010, 1011.) It was only the repetition of the mistake that made the court interject with comments such as "That's about the sixth or seven time you have done that." (Tr. at 1138.) However, each incident cited by Petitioner was clearly corrected by either the witness, the court, or trial counsel.

[12] For example, the court said "I think he said fire marshals" (Tr. at 587) and "That's a fire marshal that we are talking about . . . .I don't have to tell you more than three or four times, do I?" (Tr. at 605).

[13] During a line of questioning where Petitioner's trial counsel was asking a witness if it was true that certain facts were not in his statement, the witness corrected the attorney and stated that one fact was actually in the statement. (Tr. at 609-10.) The court then asked, "Is it in there, Mr. Bart [Petitioner's counsel]?" and upon receiving an affirmative response, stated, "Fine. Let the jury understand that then." (Tr. at 610.)

Second, regarding the sidebar conferences in which Petitioner's trial counsel participated without Petitioner,[14] there is nothing inherently improper, or unconstitutional, about an attorney engaging in sidebars, which are convened to avoid the jury from hearing the conversations. *See, e.g., People v. Maher,* 675 N.E.2d 833 (N.Y. 1996) (stating that a defendant's right to be present at a sidebar with a potential juror is "governed exclusively by New York statutory law"). While the exclusion of a criminal defendant from a sidebar conference may violate State procedural law (*see* N.Y.C.P.L. § 260.20), it does not violate federal constitutional law, which is this Court's only concern. *See Diaz v. Herbert*, 317 F.Supp.2d 462, 473 (S.D.N.Y. 2004) (finding that "the Court need only determine whether [petitioner's] federal constitutional rights have been violated" and that the State rule entitling a criminal defendant to participate in sidebars "is not a result of federal constitutional or statutory mandate" that supports *habeas* relief). Thus, even if Petitioner's rights under State law were violated by his exclusion from sidebar conferences, "it does not rise to the level of a federal constitutional violation" and "is not cognizable on *habeas* review." *Id.*[15]

---

[14] During the course of jury selection and trial, there were at least 12 off-the-record side bar conversations between the court, prosecution, and defense counsel. (Resp't Br. at 42.) Although Petitioner alleges that at least 50 such conversations occurred, he does not cite to them. (Dkt. 1 at 83.) Thus, the Court views the 12 cited conversations as representative. For nine of those conversations, the content and any decisions following from those conversations were made clear to Petitioner and the jury. (Tr. at 12, 114, 459, 546, 721, 764, 967, 1030, 1445.) Of the remaining three conversations, they were all initiated by the prosecution in response to an objection by trial counsel and were ultimately sustained by the court, *i.e.*, favorable to Petitioner. (Tr. at 554, 565, 971.)

[15] To the extent Petitioner argues that his exclusion from the sidebar conferences violates the Due Process Clause of the Fifth and Fourteenth Amendments, ""[t]he constitutional right to be present at trial, ... [applies] only to the extent that a fair and just hearing would be thwarted by [the defendant's] absence." *United States v. Ferrarini*, 219 F.3d 145, 152 (2d Cir.2000) (internal quotations and citations omitted). In this case, there is no evidence that Petitioner's right to a fair trial was thwarted in any way as a result of his absence from the sidebar conferences. The majority of these conferences, which were conducted in a manner consistent with standard State court practice and with the participation of Petitioner's attorney, were later summarized for

Third, Petitioner's ineffective assistance claims relating to the withdrawal of Petitioner's mistrial motion, the failure to object on the basis of prosecutorial misconduct, and the failure to request a circumstantial evidence charge amount to disagreements over trial strategy and do not satisfy the performance prong of *Strickland*. Again, trial counsel's strategy need not be perfectly correct, but only within a range of competency. *See People v. Ford*, 657 N.E. 2d 265, 268 (N.Y. 1995) (a criminal defendant is entitled to competent, not perfect, representation).

Petitioner asserts that his trial counsel should not have withdrawn the mistrial motion, which was based on the judge's allegedly improper comments regarding trial counsel's errors and misstatements. However, because the court's comments did not amount to a deprivation of Petitioner's due process rights, *see supra* at Discussion Section II.b., Petitioner's counsel could have reasonably concluded that there were insufficient grounds to press this issue further. This is especially true given that at least one of these motions was explicitly denied by the court (Tr. at 611), and given that the court's comments were prompted by actual mistakes made by defense counsel and were thus neither inaccurate nor gratuitous.[16]

Petitioner also claims that his trial counsel was ineffective for not objecting to the prosecutor's comments during summation about the credibility of the defendant and his witnesses. Trial counsel's decision not to object was a strategic one that was well within the range of competency, given the likelihood that such objections would have been overruled. There is nothing improper or objectionable about a prosecutor commenting on the credibility of a defendant, or any witness, who takes the stand. *See Portuondo v. Agard*, 529 U.S. 62, 69 (2000)

---

Petitioner and the jury in open court. Petitioner has not articulated any basis for concluding that his right to a fair trial was impaired by his non-participation in the sidebar conferences. Thus, he cannot demonstrate a federal due process violation.

[16] *See supra* notes 11, 12.

(finding the prosecutor's comments on the defendant's "*credibility as a witness*" did not violate the defendant's Sixth Amendment right). In *Portuondo*, the Supreme Court reiterated the "longstanding rule that when a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.'" *Id.* (quoting *Brown v. United States*, 356 U.S. 148, 154 (1958)). Furthermore, the instances cited by Petitioner where the prosecutor purportedly vouched for the prosecution's witnesses, *see supra* note 9, were actually in response to attacks on those witnesses' credibility by defense counsel during his summation, and were thus entirely proper.[17] *See United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) (holding that when "defense counsel have attacked . . . the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion"). Furthermore, the prosecutor's rebuttal arguments themselves were not improper or inflammatory. *Cf. United States v. Heredia*, 282 Fed. App.x 42, 45 (2d Cir. 2008) (finding that prosecutor's comment in summation, while inappropriate, did not constitute reversible error, in part, because it was made in response to defense counsel's attack on the credibility of the prosecution's witnesses). Lastly, contrary to Petitioner's arguments, some of the comments about which he complains were, in fact, objected to by his trial counsel, and those objections were overruled by the court. *See supra* note 9.

Petitioner also asserts that trial counsel was ineffective for not seeking a circumstantial evidence jury instruction. Under New York law, an instruction on the law of circumstantial evidence is only appropriate if the evidence of a defendant's participation in a crime is *wholly* circumstantial. *See People v. Roldan*, 666 N.E.2d 553 (N.Y. 1996); *People v. Barnes*, 406

---

[17] For example, with respect to Krishna Singh, Petitioner's trial counsel stated, "How could you find such a person credible… a person who so clearly, when appropriate, and necessary, and proper, will come in and say things that are just so beyond comprehension . . . ." (Tr. at 1328.)

N.E.2d 1071, 1073 (N.Y. 1980). Because Petitioner's case involved direct evidence of his guilt, his trial counsel reasonably could have anticipated that a circumstantial evidence request would have been denied. Thus, it was not ineffective for Petitioner's attorney not to seek this charge.

### iii. Petitioner's Claims of Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel provided ineffective assistance because he did not argue trial counsel's ineffectiveness for failing to (1) preserve a legal sufficiency claim with respect to the first-degree arson charge, and (2) seek dismissal of the indictment based on the omission of Petitioner's name from the individual counts. Although these claims are properly exhausted and not procedurally barred, they fail to establish a constitutional violation under AEDPA's deferential standard because Petitioner cannot satisfy the performance prong of *Strickland* with respect to either claim.

First, appellate counsel reasonably decided to omit a claim of ineffective assistance of trial counsel based on the purported failure to preserve the claim that the prosecution had not proven at trial all of the elements of first-degree arson. *See Holmes v. Bartlett*, 810 F. Supp. 550, 561 (S.D.N.Y. 1993) (agreeing with the Supreme Court in *Jones v. Barnes*, 463, U.S. 745, 753 (1983) that it does not constitute ineffective assistance of counsel if counsel does not raise every conceivable claim in his brief). The standard for reviewing the legal sufficiency of evidence in a criminal case is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Contes*, 454 N.E.2d 932, 932-32 (N.Y. 1983) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). The burden on Petitioner is therefore "very heavy," and "a conviction may be based upon circumstantial evidence and inferences based upon

the evidence, and the jury is exclusively responsible for determining a witness'[s] credibility." *United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993) (citations omitted).

Petitioner claims that there was insufficient evidence to support the damage element of Arson in the First Degree.[18]  Petitioner's position is that the testimony of Fire Marshal Patterson as to observing a "yellow soot stain" was insufficient, partly due to the vagueness of his description and partly due to the fact that Patterson only "think[s]" the soot stain was caused by the March 6, 2001 firebombing when it could have been a residual stain from the March 2, 2001 firebombing.  (Tr. at 1034, 1039.) (Pet'r App. Br. at 64.)

However, the record contains sufficient evidence upon which a reasonable juror could find that the damage element was proved beyond a reasonable doubt.  First, the jury reasonably could have credited Patterson's identification of the soot stains based on his experience as a Fire Marshal.[19]  Second, the video evidence showed that the location of the yellow soot stain identified by Patterson corresponded to where the March 6, 2001 firebomb hit the house, and *not* where the March 2, 2001 firebomb hit.  (Tr. at 713, People's Exhibits 3 and 11.)  Accordingly, in light of this evidence establishing the damages element, it was reasonable for trial counsel not to raise or preserve this issue at the conclusion of the trial.

By extension, it was also reasonable for appellate counsel not to allege an ineffective assistance claim against trial counsel for not preserving the issue.  The record demonstrates that appellate counsel made a strategic decision to address this issue directly through a sufficiency of the evidence claim, rather than more circuitously through an ineffective assistance of counsel

---

[18] New York Penal Law § 150.20 defines Arson in the First Degree as when a person "intentionally damages a building or motor vehicle by causing an explosion or a fire."  N.Y. Pen. Law § 150.20.

[19] Patterson's testimony was buttressed by another Fire Marshal, who explained that the accepted definition of soot is "residue from combustibles that were not completely burned."  (Tr. at 765.)

claim. (Pet'r App. Br. at 61.) In challenging the sufficiency of Petitioner's first-degree arson conviction, appellate counsel argued that the evidence was legally insufficient to prove that the Nath house was damaged on March 6, and, therefore, the first-degree arson conviction should be reversed. (Pet'r App. Br. at 61-65.) Appellate counsel also asked the Appellate Division to invoke their fact-finding power and find that the verdict on this count was against the weight of the evidence. *Id*. at 65-67. Had the Appellate Division agreed that the damage evidence was insufficient, it could have granted relief, regardless of trial counsel's failure to move for dismissal on this ground. *See* N.Y. Crim. Proc. Law § 470.15(3), (5), (6). Thus, appellate counsel's decision not to raise a claim that trial counsel was ineffective for not preserving this argument did not prevent appellate review of the sufficiency of evidence issue, and instead ensured appellate consideration of that issue. This decision was reasonable and clearly fell within the "wide range of reasonable professional assistance" entrusted to attorneys. *Holmes*, 810 F.Supp. at 561 (quoting Strickland v. Washington, 466 U.S. at 689); *see Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("it is not sufficient for the *habeas* petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."); *id.* ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.") (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)); *cf. Matire v. Wainwright,* 811 F.2d 1430, 1438 (11th Cir.1987) (finding ineffective assistance of counsel when appellate counsel ignored "a substantial, meritorious Fifth Amendment issue," raising instead a "weak issue").[20]

---

[20] This conclusion is reinforced by the fact that appellate counsel included eight separate arguments on appeal. *See supra* Background Section III.

Furthermore, Petitioner has failed to show prejudice from the omission of this ineffective assistance claim on appeal. Indeed, the Appellate Division's rejection of Petitioner's sufficiency of the evidence argument undercuts both the argument that trial counsel was ineffective for not preserving the issue and that appellate counsel was ineffective for not alleging deficient performance by trial counsel for not doing so.

Second, Petitioner's appellate counsel also made a reasonable choice not to raise the claim that trial counsel was ineffective for failing to move for dismissal of the indictment on the ground that Petitioner's name was improperly omitted from the individual counts of the indictment. Petitioner cites no authority, and the Court has found none, for the proposition that a criminal defendant's name must appear in each count of an indictment. Rather, Petitioner's name appeared in the caption and after each charge listed at the beginning of the indictment. (Dkt. 10 - Indictment at 1-2.) It was clear which crimes Petitioner was accused of in the indictment. Therefore, Petitioner cannot demonstrate that his trial counsel should have raised this issue or that his appellate counsel should have asserted an ineffective assistance claim based on trial counsel's failure to do so.

Furthermore, Petitioner has failed to allege any prejudice that resulted from the omission of his name from the counts of the indictment. *Strickland*, 466 U.S. at 694. Indeed, there is no question that Petitioner was timely notified and fully aware of the charges that he was indicted and tried on.

Accordingly, appellate counsel's decision not to allege ineffective assistance of trial counsel on this basis was a proper exercise of professional judgment, and does not amount to ineffective assistance under *Strickland*.

### III. Petitioner's Motion for an Evidentiary Hearing

Petitioner also asks the Court to grant relief in the form of an evidentiary hearing on his 440 Motion, in which Petitioner argued that the State court did not have jurisdiction over the Petitioner because his name did not appear on the individual counts of the indictment. (Dkt. 1 at 15.)

The State court's decision denying a hearing withstands AEDPA's deferential standard. First, the State court was not legally required to grant a hearing on the motion. Under New York Criminal Procedure Law § 440.30, there is no obligation for the court to hold a hearing. Rather, Section 440.30(1) only requires the court to consider all documents filed by the movant for the "purpose of ascertaining whether the motion is determinable without a hearing to resolve questions of fact." Furthermore, the court may deny a motion without a hearing "if the moving papers do not allege any ground constituting legal basis for the motion." N.Y. Crim. Proc. Law § 440.30(4)(a).

Second, as previously discussed, there is no legal basis for Petitioner's assertion that his indictment was defective because he was not identified by name in each count of the indictment, nor are there any facts to be developed on this issue at an evidentiary hearing. The indictment speaks for itself, and thus the State court's decision not to grant a hearing was reasonable.

Nevertheless, this Court is not bound by State court procedures, and has the discretion to hold an evidentiary hearing with respect to this issue. *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999) ("A district court has broad discretion to hear further evidence in habeas cases."). However, such discretion "is typically exercised when a new hearing would have the potential to advance the petitioner's claim*." Lopez v. Miller*, 906 F. Supp. 2d 42, 53 (E.D.N.Y. 2012) (internal quotations omitted) (quoting *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000).

No such purpose would be served here by an evidentiary hearing.  As discussed, there are no facts to be developed regarding whether or where Petitioner's name appears on the indictment. Accordingly, Petitioner's request for an evidentiary hearing regarding his 440 Motion is denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of *habeas corpus* and motion for an evidentiary hearing are denied.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c)(2).  The Clerk of the Court shall enter judgment accordingly and close this case.


SO ORDERED:


 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: April 24, 2015
         Brooklyn, New York